UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

VIRGIL GREEN,

                    Plaintiff,                  Case No. 2:21-cv-173

v.                                       Honorable Maarten Vermaat

GERALD COVERT et al.,

                    Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought leave to proceed *in forma pauperis* and was denied because he has "three strikes" pursuant to 28 U.S.C. § 1915(g).  (ECF Nos. 5, 6.)  Plaintiff paid the requisite filing fee on September 24, 2021.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge.  (ECF No. 4.)

        Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss:  (1) Plaintiff's civil conspiracy claim; (2) Plaintiff's First Amendment retaliation claim based upon his transfer against all Defendants; (3) Plaintiff's remaining First Amendment retaliation claims against Defendants Wilson, Miller, Haske, and Krause; (4) Plaintiff's Eighth Amendment claims against Defendants Wilson, Miller, Krause, and MacDowell; and (5) Plaintiff's state law claims against Defendants Wilson, Miller, Krause, and MacDowell.

The following claims remain in the case:  (1) Plaintiff's First Amendment retaliation damages claim against Defendant Covert premised upon delay and denial of open-toe compression stockings and removal from the chronic care clinic; (2) Plaintiff's Eighth Amendment damages claims against Defendants Covert and Haske; and (3) Plaintiff's state law claims against Defendants Covert and Haske.

## **Discussion**

### I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Parnall Correctional Facility (SMT) in Jackson, Jackson County, Michigan.  The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.  Plaintiff sues Nurse Practitioner Susan H. Wilson, Registered Nurse Supervisor Gerald Covert, and Registered Nurses Denny Miller, Tiffany Haske, Unknown Krause, and Amy L. MacDowell.

Plaintiff alleges that on April 29, 2015, while he was incarcerated at the Kinross Correctional Facility, he was examined by Nurse Practitioner Penny Rogers "who discovered that Plaintiff suffered from a case of having varicose veins in his legs, which restricts the flow of blood from rising from the feet area."  (Compl., ECF No. 1, PageID.5.)  Rogers provided Plaintiff with a special accommodation for compression stockings.  (*Id.*)  Plaintiff wore the closed-toe

compression stockings for several months, but he began experiencing "throbbing pains in his large left and right toes, due to [a] prior medical condition of having large toe damage, [for] which medical box-toe shoes had to be prescribed." (*Id.*, PageID.6.)  Plaintiff cut out the toe area of the compression stockings and "realized that it provided relief to his toes, causing the pain to go away." (*Id.*)

Plaintiff was transferred to URF on July 22, 2015.  (*Id.*)  He began experiencing numbness and discomfort in his feet "from the excess material of the stocking rolling up around mid feet, cutting off blood circulation."  (*Id.*)  In 2017, Plaintiff learned from another inmate that open-toe compression stockings were available.  (*Id.*)  He began sending kites to healthcare requesting open-toe stockings.  (*Id.*)  At some point, he was examined by Defendant Covert, who told Plaintiff that there were no open-toe stockings available, and that medical staff provided only closed-toe stockings.  (*Id.*)  Plaintiff avers that he "had to suffer and endure the pain and emotional distress of either having the closed-toe hurting his toes or the cut-out version cutting off his blood flow."  (*Id.*, PageID.6–7.)

On June 25, 2018, Plaintiff sent another kite regarding the pain he had been experiencing from cutting the toes out of his compression stockings.  (*Id.*, PageID.7.)  Defendant Krause responded, "informing Plaintiff that they did not have open-toe hoses and to 'stop cutting the toes out,' but refus[ing] to examine Plaintiff."  (*Id.*)  On July 4, 2018, Plaintiff filed a grievance against Defendants Covert and Krause "for refusing to examine him and denying him open-toe medical stockings."  (*Id.*)

On July 6, 2018, Plaintiff saw Defendant Wilson for his six-month chronic care examination.  (*Id.*)  Plaintiff told Defendant Wilson about the pain and distress he suffered.  (*Id.*)  Defendant Wilson examined Plaintiff's feet, "then went to a closet and retrieved a pair of open-

toe compression stockings for Plaintiff to put on." (*Id.*)  She told Plaintiff that "she would email Defendant Covert to order a second pair for exchanging when one pair is being washed." (*Id.*)

On July 10, 2018, Plaintiff was called to healthcare to be interviewed regarding his grievance. (*Id.*)  Upon entering the healthcare department, Plaintiff was approached by Defendant Covert, who "gave Plaintiff a look of hatred and stated in an irate tone, 'go see nurse Haske' and pointed Plaintiff in her direction." (*Id.*, PageID.8.)  Defendant Haske "also informed Plaintiff in an irate tone that he was there to be interviewed on his grievance and stated, 'we don't have open-toe stockings and we're not required to order them if it do[es] not say it.'" (*Id.*)  Plaintiff replied, "I recently saw Wilson and she said she would e-mail Covert to order open-toe stockings." (*Id.*)  Defendant Haske responded, "We are not ordering them, so you can leave." (*Id.*)  On July 11, 2018, Plaintiff filed a grievance against Defendants Haske and Covert. (*Id.*)

On July 13, 2018, Plaintiff sent another healthcare kite requesting a second pair of open-toe stockings, and he was called to healthcare to speak to Defendant Covert. (*Id.*)  Defendant Covert "began to harass and intimidate Plaintiff by saying in [a] sarcastic tone, "You are the only prisoner at this entire prison who needs open-toe stockings, you will just have to wait your turn, but filing grievances will only make matters worse for you." (*Id.*)  On July 23, 2018, Plaintiff submitted another kite about "the need to have the second pair of open-toe stocking[s], which forced him to wear nothing for the few times he had to wash them." (*Id.*)  On July 26, 2018, Plaintiff received the second pair of open-toe stockings. (*Id.*, PageID.8–9.)

Plaintiff avers that, thereafter, "for approximately twelve months," he had to endure "retaliatory delays" from Defendant Covert "in providing Plaintiff with open-toe stocking[s] by either:  [(1)] calling [P]laintiff over to healthcare knowing there were no stockings ordered and (2) having Plaintiff throw the old ones away, just to make him wait days until he gets any

4

replacements, causing Plaintiff to suffer and endure pain in his feet." (*Id.*, PageID.9.)  Plaintiff

avers that he "had to always deal personally with Defendant Covert when requesting stockings."

(*Id.*)

Plaintiff avers that during this time, he was a chronic care patient, receiving chronic

care examinations every six months for his varicose veins and irritable bowel syndrome.  (*Id.*)  On

July 21, 2019, Plaintiff submitted a kite to notify healthcare that he had not received his chronic

care examination since January 2019.  (*Id.*, PageID.9–10.)  Defendant Miller responded, "You are

scheduled yearly to see [a] medical provider, not every six months."  (*Id.*, PageID.10.)  On

September 9, 2019, Plaintiff again submitted a kite about not being scheduled for chronic care.

(*Id.*)  Defendant Covert responded, "I cannot see where you are in a chronic care clinic at this time.

[O]nly meds you take are lactase and a topical steroid cream." (*Id.*)  He did not mention Plaintiff's

other medical conditions.  (*Id.*)

On September 13, 2019, Plaintiff submitted a grievance alleging that Defendants

Miller, Covert, and Wilson had conspired to remove him from the six-month chronic care clinic

because of his prior grievances and complaints.  (*Id.*)  On September 18, 2019, Plaintiff received

a response indicating that he had "been scheduled regularly to see the medical provider for reasons

it assumed, 'gastrointestinal and integumentary' complaints, but again no mention of why Plaintiff

has to wear compression stockings."  (*Id.*)  Plaintiff avers that Defendant Covert "continued to

delay the ordering of open-toe stockings for Plaintiff whenever the need to exchange for [a] new

pair arose, leaving Plaintiff without stockings until Defendant got around to ordering them, causing

Plaintiff to suffer and endure unnecessary pain in his feet from reduc[tion] in blood flow." (*Id.*)

In November 2020, Plaintiff requested an exchange of stockings and was called to

healthcare on November 20, 2020, for the exchange.  (*Id.*, PageID.11.)  When he arrived,

Defendant Covert had him throw the used stockings in the trash, "then proceeded to hand Plaintiff one pair of open-toe stockings, and not a second pair for changing when one is being washed." (*Id.*)  Plaintiff asked why he always had to wait to "get any [open-toe stockings] or to get a second pair, but the storage closet is always full for inmates who need closed-toe stockings."  (*Id.*) Defendant Covert became "irate" and stated, "What are you going to do, file another grievance? That's not going to make you get them sooner."  (*Id.*)

On March 21, 2021, Plaintiff submitted a kite asking to exchange his open-toe stockings.  (*Id.*)  On March 25, 2021, he was called to healthcare, and when he arrived, Defendant Covert threw away the old pair, "went to the storage closet and returned and handed Plaintiff two pair[s] of rolled up stockings and walked away quickly." (*Id.*)  Plaintiff unrolled the stockings and saw that they were closed toe.  (*Id.*)  He complained that he needed open-toe stockings and told Defendant Covert that he would be filing a grievance.  (*Id.*, PageID.11–12.)  Defendant Covert responded, irately, "Oh yeah, then you will get them when I get around to ordering them, now I'm giving you a direct order to leave health care."  (*Id.*, PageID.12.)  Plaintiff "again had to endure being without open-toe stockings and as a result suffered swelling and painful feet, which [a]ffected his ability to walk to chow, exercise[,] and to callouts."  (*Id.*)

On March 29, 2021, Defendant Covert was administering COVID-19 testing to inmates in Plaintiff's housing unit.  (*Id.*)  Plaintiff asked him when he would provide the open-toe stockings.  (*Id.*)  Defendant Covert responded, "Like I said before, when I get enough guys to order for."  (*Id.*)  Plaintiff filed a grievance against Defendant Covert that same day.  (*Id.*)

On April 5, 2021, Plaintiff submitted a healthcare kite requesting the open-toe stockings and "explaining that he was having pain in his feet without them, which prevented [him] from sleeping at night."  (*Id.*)  Two days later, Defendant MacDowell responded, stating, "Your

compression stockings have been ordered.  You will be called out when they arrive."  (*Id.*)  She refused, however, to examine Plaintiff's feet.  (*Id.*)  That same day, Plaintiff received a response to his grievance, stating "the special accommodation states only compression stockings."  (*Id.*, PageID.13.)  Plaintiff asserts that this response covered up Defendant Covert's retaliatory acts and that healthcare officials "were aware that medical records existed showing that a new special accommodation notice was created to show open-toe stockings since July 6, 2018."  (*Id.*)

Plaintiff alleges that on May 6, 2021, Defendants "played a role" in having him transferred from URF "to further avoid having to provide Plaintiff with an open-toe [] special accommodation notice (SAN) and detail, in retaliation for the prior complaints made."  (*Id.*)  In late May or early June 2021, Plaintiff received a step II appeal response to his one grievance, which "conceded to [D]efendants' having documented records of Plaintiff's special accommodation notice (SAN) for medical open-toe stockings, which was updated in July 2018."  (*Id.*)  He asserts, however, that the response "continued to show [D]efendants' vindictive unwillingness to correct any error in the records and provide Plaintiff with an open-toe special accommodation detail." (*Id.*)

Based on the foregoing, Plaintiff alleges violations of his First and Eighth Amendment rights.  (*Id.*, PageID.14–15.)  He also asserts that Defendants conspired to violate his rights.  (*Id.*, PageID.15.)  Plaintiff also raises state-law claims for mental and emotional distress, negligence, gross negligence, and intentional infliction of emotional distress.  (*Id.*)  Plaintiff seeks declaratory relief, as well as compensatory and punitive damages.  (*Id.*, PageID.16.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     First Amendment Claims

Plaintiff suggests that Defendants Covert, Wilson, Miller, Haske, and Krause violated his First Amendment rights by retaliating against him for his complaints and grievances by delaying or denying him open-toed compression stockings and removing him from the six-month chronic care clinic.  (Compl., ECF No. 1, PageID.14.)  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

### 1.     Protected conduct

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  Plaintiff identifies several grievances he filed against one or more of the Defendants.  Moreover, Plaintiff alleges that he frequently complained directly to one or more of the Defendants regarding the medical treatment they were providing.  Those complaints may also be protected conduct.  The First Amendment protects the airing of grievances whether written or oral.  *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981,

984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Accordingly, Plaintiff has adequately alleged that he engaged in protected conduct.

### 2.      Adverse action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Plaintiff identifies three distinct "adverse actions": (1) delays and refusals to supply open-toed compression stockings that were required to treat Plaintiff's medical conditions; (2) removing Plaintiff from the chronic care clinic; and (3) transfer from URF to SMT.

### a.      compression stockings

The refusal to accommodate Plaintiff's medical conditions with open-toed compression stockings could certainly deter a person of ordinary firmness from engaging in protected conduct where that action caused pain. Plaintiff makes clear that he principally dealt with Defendant Covert regarding the open-toed compression stockings. Plaintiff plainly alleges that Covert played a key role in delaying or denying Plaintiff's access to open-toed compression stockings. Defendant Haske likewise played some role in denying or delaying Plaintiff's access to open-toed stockings in that she responded to Plaintiff's grievance asking for the stockings by

stating "we are not ordering them, so you can leave."  (Compl, ECF No. 1, PageID.8.)  Haske's actions might also be construed as adverse action.  But not every Defendant denied or delayed that accommodation to Plaintiff.

Defendant Krause informed Plaintiff on one occasion that the prison did not have open-toed compression stockings.  Plaintiff does not contend that Krause's information was incorrect or that Krause played any role in the decision to stock or not stock open-toed compression stockings.  Thus, Plaintiff has failed to allege that Krause was directly involved in any action that might deter Plaintiff.

Defendant Wilson saw Plaintiff a month later.  She gave Plaintiff open-toed compression stockings and told Plaintiff she would write to Covert regarding the need to order more.  With regard to this accommodation, Plaintiff alleges no "adverse action" by Wilson that might have deterred Plaintiff from engaging in protected conduct.

Plaintiff alleges that Defendant MacDowell responded to Plaintiff's April 5, 2021, written request for open-toed compression stockings by stating "your compression stockings have been ordered.  You will be called out when they arrive."  (*Id.*, PageID.12.)  Plaintiff does not suggest that MacDowell played any role in denying Plaintiff the stockings.  Plaintiff does contend that he was distressed that MacDowell responded without examining Plaintiff's feet.  (*Id.*, PageID.12–13.)  But Plaintiff repeatedly alleges that his conditions were well-documented.  He does not indicate how MacDowell's examination would have impacted Plaintiff's care in any way.  The Court concludes that Plaintiff has failed to allege adverse action by MacDowell.

Plaintiff's allegations do not suggest that Defendant Miller played any role in delaying or denying access to open-toed compression stockings.  Thus, the Court concludes that Plaintiff has failed to allege that Miller participated in this particular adverse action.

### b.      chronic care clinic

Plaintiff next alleges that his removal from the chronic care clinic, and the every-six-month appointments available to chronic care patients, constituted adverse action.  Plaintiff contends that Defendants Miller, Covert, and Wilson participated in that adverse action.

Plaintiff's complaint is silent as to how Wilson participated.  With respect to Miller, the complaint states only that Miller informed Plaintiff that he was scheduled to see the medical provider yearly, not every six months.  (Compl., ECF No. 1, PageID.9–10.)  Plaintiff alleges no facts from which the Court might infer that Miller was responsible for so scheduling Plaintiff's appointments or that Miller played any role in "removing" Plaintiff from the chronic care clinic.

Plaintiff's allegations regarding Covert are a little more revealing.  Covert stated that based on Plaintiff's medications, Plaintiff did not appear to be eligible for chronic care clinic. Standing alone, that allegation seems innocuous; however, considered in the context of the wealth of allegations regarding Covert's hostility and role in denying and delaying access to the compression stockings, the Court concludes that the allegations suffice to support an inference that Covert directly participated in Plaintiff's removal from the chronic care clinic.

### c.      transfer

In general, a transfer from one prison facility to another is not considered adverse. *See LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013) (citing *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003)).  "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct."  *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005).  Plaintiff's transfer was from one Level I facility to another Level I facility.  Transfers to the general population of another prison are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases).  Plaintiff does not

allege that he was transferred to administrative segregation or a lock-down unit at SMT. *See Hill v. Lappin*, 630 F.3d 468, 474–75 (6th Cir. 2010). Plaintiff, therefore, cannot maintain a retaliation claim against Defendants based upon his transfer from URF to SMT.

### d. conspiracy

Plaintiff, perhaps recognizing that his allegations of direct participation in the adverse actions were weak, also alleges that the Defendants conspired together to take the adverse actions. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a period of time involving numerous individual officers. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them, beyond the fact that they all work for the MDOC, in the same correctional facility, in the same department. Put simply, to suggest that Defendants conspired, Plaintiff relies entirely on a highly

attenuated inference from the mere fact that all of the Defendants participated in providing him healthcare over the last several years.  As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made."  *Twombly*, 550 U.S. at 556.  Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680.  In light of the far more likely possibility that the various incidents occurring over the long history of Plaintiff's incarceration were unrelated, Plaintiff fails to state a plausible claim of conspiracy. Because there is no plausible allegation of conspiracy, no Defendant can be held responsible for the specific actions of any other Defendant based on a theory that they care co-conspirators.

### 3.    Retaliatory motive

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).  "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

14

There are three potential actionable adverse actions that remain: Defendant Covert's action in delaying or denying Plaintiff's access to open-toed compression stockings; Defendant Haske's action in delaying or denying Plaintiff's access to open-toed stockings; and Defendant Covert's action in removing Plaintiff from the chronic care clinic. Those adverse actions only implicate First Amendment protections if they were motivated by Plaintiff's protected conduct. With regard to Defendant Covert, Plaintiff has alleged facts—specifically Defendant Covert's frequent references to the grievances Plaintiff filed and repeated pronouncements that Plaintiff's efforts were futile in advancing his cause—from which the Court might infer that Defendant Covert was acting adversely to Plaintiff because of his protected conduct. Accordingly, Plaintiff has alleged all three parts of a retaliation claim against Defendant Covert regarding the delay or denial of open-toed compression stockings and the removal of Plaintiff from the chronic care clinic.

Plaintiff's retaliation allegations against Defendant Haske, however, fall short at the third step. As part of resolving Plaintiff's initial grievance against Covert, Haske either interviewed or formally responded to the grievance. She responded by informing Plaintiff that they would not be ordering open-toed compression stockings. In one sense, there is plainly some relationship between Plaintiff's protected conduct—the grievance against Covert—and Haske's action—refusing to order open-toed stockings—because the action was the direct response to the grievance. Of course, if that type of connection were sufficient, the denial of every medical grievance—and perhaps every grievance—would state a First Amendment retaliation claim. That is obviously not the case.

Plaintiff must allege something more. The only additional fact he alleges with regard to Defendant Haske is that she spoke "in an irate tone." (Compl., ECF No. 1, PageID.8.)

But "bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening. *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). The Court concludes, therefore, that Plaintiff has failed to state a retaliation claim against Defendant Haske.

### B.       Eighth Amendment claims

Plaintiff avers that Defendants violated his Eighth Amendment rights by failing to provide adequate medical treatment for his varicose veins and foot pain, including the delay and denial of open-toed compression stockings and removal from the six-month chronic care clinic. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial

risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).  Obviousness, however, is not strictly limited to what is detectable to the eye.  Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear.  *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care.  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Farmer,* 511 U.S. at 835.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." *Id.* at 837.  To prove a defendant's subjective

knowledge, "[a] plaintiff may rely on circumstantial evidence . . . :  A jury is entitled to 'conclude

that a prison official knew of a substantial risk from the very fact that the risk was obvious.'"

*Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical

treatment states a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105.  As the Supreme

Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to
> constitute an unnecessary and wanton infliction of pain or to be repugnant to the
> conscience of mankind.  Thus, a complaint that a physician has been negligent in
> diagnosing or treating a medical condition does not state a valid claim of medical
> mistreatment under the Eighth Amendment.  Medical malpractice does not become
> a constitutional violation merely because the victim is a prisoner.  In order to state
> a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to
> evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted).  Thus, differences in judgment between an inmate and prison

medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state

a deliberate indifference claim.  *Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995); *Ward

v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the

misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v.

Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a

complete denial of medical care and those cases where the claim is that a prisoner received

inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a

prisoner has received some medical attention and the dispute is over the adequacy of the treatment,

federal courts are generally reluctant to second guess medical judgments and to constitutionalize

claims which sound in state tort law."  *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland

*Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff essentially alleges that the same actions that were characterized as adverse in connection with the First Amendment retaliation analysis—delay or denial of access to open-toed compression stockings and removal from the chronic care clinic—also demonstrate deliberate indifference to his serious medical needs. Thus, to the extent the Court has already concluded that a particular defendant did not participate in the alleged "adverse action," it is necessarily true that the defendant was not, by virtue of the adverse action, deliberately indifferent to Plaintiff's serious medical needs. Accordingly, Plaintiff has failed to state an Eighth Amendment claim against Defendants Krause, Wilson, MacDowell, or Miller.

### 1. Compression stockings

Plaintiff alleges that on numerous occasions, Defendant Covert delayed or denied providing him with open-toe compression stockings despite knowing that the closed-toe stockings caused Plaintiff to experience more foot pain. Although Plaintiff has by no means proven deliberate indifference on the part of Defendant Covert, his factual allegations, accepted as true, support the inference that Plaintiff suffered a serious medical need, and that Defendant Covert may

have been deliberately indifferent to that need.  Therefore, the Court concludes that Plaintiff has alleged sufficient facts to support an Eighth Amendment claim against Defendant Covert with respect to the delay or denial of open-toed compression stockings.

The same is true of Plaintiff's allegations regarding Defendant Haske.  Although Plaintiff has by no means proven deliberate indifference on the part of Defendant Haske, his factual allegations, accepted as true, support the inference that Plaintiff suffered a serious medical need, and that Defendant Haske may have been deliberately indifferent to that need.  Therefore, the Court concludes that Plaintiff has alleged sufficient facts to support an Eighth Amendment claim against Defendant Haske, with regard to the delay or denial of open-toed compression stockings.

**2.      Removal from the chronic care clinic**

Although Plaintiff contends that he met the criteria for participation in the chronic care clinic, he does not allege that his annual healthcare checkup, as supplemented by Plaintiff's apparently frequent visits to healthcare following his kites, resulted in the provision of inadequate healthcare.  Accordingly, the Court concludes that Plaintiff has failed to state an Eighth Amendment deliberate indifference claim with regard to his removal from the chronic care clinic.

**C.      Claims for Declaratory Relief**

As noted *supra*, Plaintiff seeks declaratory relief against Defendants.  Plaintiff, however, is no longer confined at URF.  The Sixth Circuit has held that transfer to another prison facility moots a prisoner's injunctive and declaratory claims.  *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).  Plaintiff is now confined at SMT, and Defendants are not employed at that facility.  His claims for declaratory relief will, therefore, be dismissed as moot.

**D.      State Law Claims**

Plaintiff also raises state-law claims for mental and emotional distress, negligence, gross negligence, and intentional infliction of emotional distress.  (Compl., ECF No. 1,

20

PageID.15.)  Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for violations of state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Plaintiff's assertion that Defendants violated state law, therefore, fails to state a claim under § 1983.

Plaintiff, however, seeks to invoke this Court's supplemental jurisdiction over his state law claims.  Because Plaintiff's First and Eighth Amendment claims against Defendant Covert, as well as his Eighth Amendment claim against Defendant Haske, remain pending, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against Defendants Covert and Haske.

The Court, however, has dismissed all of Plaintiff's federal claims against Defendants Wilson, Miller, Krause, and MacDowell.  Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims.  Dismissal, however, remains "purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  Here, in light of the Court's dismissal of the federal claims against Defendants Wilson, Miller, Krause, and MacDowell, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction as to these Defendants.  Accordingly, Plaintiff's state law claims against Defendants Wilson, Miller, Krause, and MacDowell will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss the following claims for failure to state a claim, under 28 U.S.C. § 1915A(b),

and 42 U.S.C. § 1997e(c):  (1) Plaintiff's civil conspiracy claim; (2) Plaintiff's First Amendment retaliation claim based upon his transfer against all Defendants; (3) Plaintiff's remaining First Amendment retaliation claims against Defendants Wilson, Miller, Haske, and Krause; and (4) Plaintiff's Eighth Amendment claims against Defendants Wilson, Miller, Krause, and MacDowell. Plaintiff's state law claims against Defendants Wilson, Miller, Krause, and MacDowell will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.  Moreover, Plaintiff's claims for declaratory relief will be dismissed as moot.

The following claims remain in the case:  (1) Plaintiff's First Amendment retaliation damages claim against Defendant Covert premised upon delay and denial of open-toe compression stockings and removal from the chronic care clinic; (2) Plaintiff's Eighth Amendment damages claims against Defendants Covert and Haske; and (3) Plaintiff's state law claims against Defendants Covert and Haske.

An order consistent with this opinion will be entered.


Dated:    February 15, 2022                                    /s/ *Maarten Vermaat*
                                                                              Maarten Vermaat
                                                                              United States Magistrate Judge